**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,      )
                     )
      v.             )      ID Nos.  2106007748 &
                     )                 2207010076
NA-ZER HAYMAN-COOPER,   )
             Defendant.  )

Submitted: March 24, 2025
Decided: June 27, 2025

*Upon Defendant Na-Zer Hayman-Cooper's*
*Motion for Postconviction Relief,*
**DENIED**.

## ORDER

This 27th day of June, 2025, upon consideration of the Defendant's Motion for Postconviction Relief (D.I. 57)[1], the State's response (D.I. 72), the Defendant's reply (D.I. 75), and the record in this matter, it appears to the Court that:

(1)    In September 2021, Na-Zer Hayman-Cooper was indicted for multiple crimes in Case Nos. 2106007748 (which arose from a shooting in June 2021 that paralyzed the victim), 2106008755 (which arose from the theft of a cell phone in May 2021), and 210600838 (which arose from the theft of a gun in June 2021). In August 2022, Mr. Hayman-Cooper was indicted in Case No. 2207010076 for tampering with a witness (the shooting victim in Case No. 2106007748).

---

[1]   To avoid confusion, all docket references are to those made in Case ID No. 2106007748.

- 1 -

(2)     On March 13, 2023, Mr. Hayman-Cooper resolved all of these cases by pleading guilty to first-degree assault and possession of a firearm during the commission of a felony (PFDCF) from Case No. 2106007748 and the witness tampering count from Case No. 2207010076.[2]  He did so in exchange for the State's dismissal of the remaining indicted counts from each of his then-pending cases.[3]

(3)     Mr. Hayman-Cooper's sentencing occurred on June 2, 2023, after a comprehensive presentence investigative (PSI) report was prepared.  In addition to those materials compiled in that PSI report, the parties filed their own supplemental sentencing memoranda.[4]

(4)     He was sentenced as follows:  (a) for Assault First Degree (IN21-07-1139)—25 years at supervision Level V suspended after 7 years for diminishing levels of supervision; (b) for PFDCF (IN21-07-1140)—25 years at supervision Level V suspended after 3 years for diminishing levels of supervision; and (c) for Tampering With a Witness (IN22-03-2061)—6 months at supervision Level V to be served under the provisions of 11 *Del. C.* § 4204(k) with no probation to follow.[5]

(5)     Mr. Hayman-Cooper's 10½-year period of unsuspended imprisonment is comprised, in part, of two separate minimum terms of incarceration that must be

---

[2]   D.I. 35 (Plea Agreement and TIS Guilty Plea Form).

[3]   Plea Agreement at 1.

[4]   D.I. 36 and 37.

[5]   D.I. 38 (Sentencing Order).

imposed under a combination of Delaware's first-degree assault and PFDCF statutes; those two separate minimum terms total 5 years.[6] The remaining 5½ years the Court imposed as an exercise of its own sentencing judgment.

(6) At the time of sentencing, the Court noted the aggravating and mitigating circumstances it found:

> To the extent this sentence might exceed any applicable SENTAC guidelines (including the application of 11 *Del. C.* sec. 4204(k)), the Court finds the following aggravating factors inform such departure: (1) the Defendant took affirmative steps to dissuade or prevent victim and witness cooperation in his prosecution; (2) the Defendant has demonstrated a lack of amenability to lesser sanctions and repeated lack of respect for the mandates of the courts; and (3) any lesser sentence would unduly depreciate the devastating and permanent physical injury and disability the Defendant inflicted on the victim, J--- S---.
>
> All that noted, the Court does also recognize the demonstrated and unaddressed mental health issues Mr. Hayman-Cooper obviously has and that no doubt are a product of his chaotic childhood and the deprivations then suffered.[7]

---

[6] *See* DEL. CODE ANN. tit. 11, §§ 613, 1447A, and 4205(b) (2020) (first-degree assault is a class B violent felony carrying a statutory minimum of two years at Level V; PFDCF carries a statutory minimum of three years at Level V).

[7] Sentencing Order at 4; Sentencing Transcript at 13-16 (D.I. 44) (the Court articulates the applicable sentencing guidelines, these same aggravators and mitigators, and its reasons for application of or departure from certain of the guidelines). *See* DEL. CODE ANN. tit. 11, § 4204(n) (2020) ("Whenever a court imposes a sentence inconsistent with the presumptive sentences adopted by the Sentencing Accountability Commission, such court shall set forth on the record its reasons for imposing such penalty."); *see also White v. State*, 243 A.3d 381, 410-11 (Del. 2020) (identifying Delaware Supreme Court Administrative Directive No. 76 as another source for the requirement); *and id.* at 413-14 ("A Section 4204(k) sentence is treated as a departure from the presumptive guidelines. Thus, the Superior Court has traditionally been reluctant to use § 4204(k) when imposing *any* sentence, and reserves that sanction for appropriate cases, such as ones in which the need for the protection of the public is predominate.") (cleaned up).

(7)     Mr. Hayman-Cooper, through counsel, docketed a timely direct appeal from his convictions and sentence.  His attorney later filed a no-merits brief under Supreme Court Rule 26(c) and Mr. Hayman-Cooper personally submitted points attacking the validity of both his plea and sentence for the Supreme Court's consideration on direct appeal.[8]   His convictions and sentence were ultimately affirmed.[9]

(8)     While his direct appeal was pending, Mr. Hayman-Cooper, acting *pro se*, filed the two motions invoking Superior Court Criminal Rule 35.  Those motions were denied.[10]  Now before the Court is his Motion for Post Conviction Relief.[11]  He complains:  (a) that his sentence is illegal and the product of abuse of judicial discretion; (b) of a purported violation of his speedy trial right; and (c) that he received ineffective assistance of counsel.[12]

## RULE 61'S PROCEDURAL BARS

(9)     Delaware courts must consider Criminal Rule 61's procedural requirements before addressing any substantive issues.[13]  The procedural bars in

---

[8]     *Hayman-Cooper v. State*, 2024 WL 321570, at *1-2 (Del. Jan. 29, 2024) (*Hayman-Cooper I*).

[9]     *Id.*

[10]     *State v. Hayman-Cooper*, 2024 WL 2815333 (Del. Super. Ct. June 3, 2024), *appeal dismissed*, 328 A.3d 301 (Del. 2024) (*Hayman-Cooper II*).

[11]     Def's Mot. for Postconviction Relief (D.I. 57).

[12]     *See generally* Def's Mot. for Postconviction Relief.

[13]     *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

Rule 61 are timeliness, repetitiveness, procedural default, and former adjudication.[14] Of these, two are relevant here.

(10)    Under Rule 61(i)(4): "Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[15]

(11)    Rule 61(i)(3) bars any particular claim that could have been but was not raised at trial or on direct appeal, unless the defendant can show cause for relief from the procedural default and prejudice.[16]    Generally, Rule 61(i)(3) is inapplicable to

---

[14]    *State v. Peters*, 283 A.3d 668, 680 (Del. Super. Ct. Sept. 30, 2022), *aff'd*, 2023 WL 3880124 (Del. June 7, 2023); *State v. Madison*, 2022 WL 3011377, at *2 (Del. Super. Ct. July 29, 2022), *aff'd*, 2022 WL 17982946 (Del. Dec. 29, 2022).  These procedural requirements are considered on a claim-by-claim basis.  *State v. Reyes*, 155 A.3d 331, 342 n.15 (Del. 2017) (instructing that the "Rule 61 analysis should proceed claim-by-claim, as indicated by the language of the rule."); *Madison*, 2022 WL 3011377, at *2.  And if any one of these bars applies to a specific claim, then it is the inmate's burden to demonstrate entitlement to exception therefrom under Rule 61(i)(5). *See Purnell v. State*, 254 A.3d 1053, 1094-95 (Del. 2021) (demonstrating that in its successive iterations, it has remained the Rule 61 movant's burden to show that the Rule 61(i)(5) exception is applicable in his case); *Madison*, 2022 WL 3011377, at *2 ("If any of the[ ] [timeliness, repetitiveness, procedural default, or former adjudication bars] apply, then the movant must show entitlement to relief under Rule 61(i)(5)."); Super. Ct. Crim. R. 61(i)(5) (providing that Rule 61's procedural bars found in (i)(1)-(4) do not apply to a claim:  that the court lacked jurisdiction;  that pleads with particularity new evidence of the defendant's actual innocence; or, that application of a new rule of constitutional law made retroactive on collateral review is required.).

[15]    Super. Ct. Crim. R. 61(i)(4).

[16]    Super. Ct. Crim. R. 61(i)(3) ("Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights.").

claims of ineffective assistance of counsel[17]—which in the norm can't be raised against trial counsel on direct appeal[18] and as a practicality aren't yet ripe against appellate counsel until the resolution of direct appeal. And so, the Court usually considers those claims on their merits during postconviction proceedings.[19]

## MR. HAYMAN-COOPER'S STANDALONE CLAIMS OF ERROR

(12) *Sentencing Claims (Grounds Ten and Eleven[20])*—Mr. Hayman-Cooper alleges the Court erred when it imposed his sentence. But "[j]ustice does not require that an issue that has been previously considered and rejected be revisited simply because the claim is refined or restated."[21] His specific sentencing complaints have already been addressed by the Delaware Supreme Court on direct appeal[22] and by this Court on his unsuccessful Rule 35(a) Motion.[23] Rule 61(i)(4)'s former adjudication bar applies here and the Court need not engage these sentencing

---

[17] *State v. Coverdale*, 2018 WL 259775, at \*2 (Del. Super. Ct. Jan. 2, 2018).

[18] *See State v. Caulk*, 2021 WL 2662250, at \* 5 (Del. Super. Ct. June 29, 2021) ("Though [the Rule 61(i)(3)] bar is inapplicable to allegations of ineffective assistance of counsel that, in all but the rarest of circumstances, couldn't have been raised on direct appeal."; *see also Guy v. State*, 82 A.3d 710, 715 (Del. 2013) ("In a jurisdiction like Delaware, where ineffective assistance of trial counsel may not be raised on direct appeal, the first post-conviction proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim.") (cleaned up).

[19] *State v. Martin*, 2024 WL 3273429, at \*2 (Del. Super. Ct. July 1, 2024).

[20] The Court utilizes the numbering of claims that is included in Mr. Hayman-Cooper's Rule 61 petition (D.I. 57) and notes that he actually includes no Ground Number 12.

[21] *Riley v. State*, 585 A.2d 719, 721 (Del. 1990); *Madison*, 2018 WL 1935966, at \*4-5.

[22] *Hayman-Cooper I*, 2024 WL 321570, at \*2 (Del. Jan. 29, 2024) (*Hayman-Cooper I*).

[23] *Hayman-Cooper II*, 2024 WL 2815333, at \*3-4 ("There is no illegality in the substance of Mr. Hayman-Cooper's sentence. Nor was that sentence imposed in an illegal manner.").

complaints yet again.

(13) ***Speedy Trial Claim (Ground Fifteen)***—Mr. Hayman-Cooper claims that his right to a speedy trial was violated due to the delays allegedly cause by the State's unavailability and unpreparedness. But this issue was not raised before his plea or on direct appeal. So consideration of it is barred unless Mr. Hayman-Cooper can show cause for relief from the procedural default and prejudice.[24] To show cause, a Rule 61 movant must "allege more than the fact that a claim was not raised earlier in the process";[25] he must show "some external impediment" prevented him from constructing or raising the claim.[26] Again, Mr. Hayman-Cooper, when on direct appeal, was himself able to raise any points he wished under Supreme Court Rule 26. And now Mr. Hayman-Cooper does nothing to demonstrate that anything prevented him from raising his speedy trial claim earlier. Instead, he simply says that the delay caused him anxiety and hardship. This isn't sufficient. And so, Mr. Hayman-Cooper's failure to show cause for his procedural default alone is fatal

---

[24] *See* Super. Ct. Crim. R. 61(i)(3) ("Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights.").

[25] *State v. Stelljes*, 2018 WL 6264707, at *3 (Del. Super. Ct. Nov. 28, 2018); *State v. Davis*, 2000 WL 305477, at *1 (Del. Super. Ct. Feb. 24, 2000) ("A showing of cause is not satisfied by showing merely that a claim was not timely raised.").

[26] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990) (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986)); *State v. Cuff*, 2010 WL 1854134, at *2 (Del. Super. Ct. Apr. 28, 2010).

to his present attempt to have his guilty plea set aside.[27]

<u>**MR. HAYMAN-COOPER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**</u>

(14) An inmate who claims ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[28] When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a challenged guilty plea, a defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[29]

(15) There is always a strong presumption that counsel's representation was reasonable,[30] and "[i]t is not this Court's function to second-guess reasonable [ ]

---

[27] *See Shelton v. State*, 744 A.2d 465, 478 (Del. 2000) ("Because he has failed to show cause for his procedural default, this Court need not consider whether [movant] can demonstrate prejudice."); *State v. Vasquez*, 2001 WL 209867, at *1 (Del. Super. Ct. Jan. 31, 2001) ("Since the Court has concluded that Defendant has failed to establish sufficient cause under Rule 61(i)(3)(A), it need not address the issue of prejudice under Subsection (i)(3)(B).").

What's more, Mr. Hayman-Cooper's claim of a violation of his right to a speedy trial was waived when he entered what the Court observes below was a valid guilty plea. *Webb v. State*, 2002 WL 31681587, at *1 (Del. July 25, 2002)

[28] *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[29] *See Albury v. State*, 551 A.2d 53, 59 (1988); *Sartin v. State*, 2014 WL 5392047, at *2 (Del. Oct. 21, 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)); *State v. Hackett*, 2005 WL 3060976, at *3 (Del. Super. Ct. Nov. 15, 2005).

[30] *See Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

tactics" engaged by trial or plea counsel.[31] Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[32] And an inmate must satisfy the proof requirements of both prongs—deficient attorney performance and resulting prejudice—to succeed in making an ineffective assistance of counsel claim. Failure to do so on either will doom the claim, and the Court need not address the other.[33]

(16)   As for the prejudice prong,[34] Mr. Hayman-Cooper is required to "plead his allegations of prejudice with particularity."[35]  And again, to successfully challenge his guilty plea now, Mr. Hayman-Cooper "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[36]

---

[31]   *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

[32]   *Alston*, 2015 WL 5297709, at *3 (citing *Wright,* 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)); *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

[33]   *Strickland,* 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[34]   *Nastatos v. State*, 2019 WL 7041891, at *3 (Del. Dec. 20, 2019) ("'[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'").

[35]   *State v. Ellerbe*, 2016 WL 4119863, at *3 (Del. Super. Ct. Sept. 26, 2017).

[36]   *State v. Dillard*, 2019 WL 118437, at *3 (Del. Super. Ct. Jan. 4, 2019) (quoting *Albury*, 551 A.2d at 59 (citing *Hill*, 474 U.S. at 58)).

(17) Mr. Hayman-Cooper was represented by two different attorneys appointed as conflict counsel by the Office of Defense Services (ODS). Elise K. Wolpert, Esquire, represented Mr. Hayman-Cooper from late June 2021 until she left criminal practice and the conflict program in November 2022.[37] In anticipation of needing substitute counsel, ODS appointed Brian J. Chapman, Esquire, to take over representation of Mr. Hayman-Cooper in late October 2022. Mr. Chapman was counsel through Mr. Hayman-Cooper's plea and sentencing.[38] While it is unclear how exactly Ms. Wolpert's representation—which ended about a half year before Mr. Hayman-Cooper's plea was entered—could have caused him to enter a plea that he would not have otherwise, the Court addresses his allegations against her for the sake of completeness.

(18) *Preliminary Hearing Claim (Ground One)*—Mr. Hayman-Cooper alleges that Ms. Wolpert's was ineffective because she waived his preliminary hearing without his consent. Ms. Wolpert details her communication with and her advice to Mr. Hayman-Cooper regarding his preliminary hearing waiver; she advised he do so because of the low chance of success and high possibility of an unfavorable bail review should a hearing be held.[39] She notes, "to the best of [her]

---

[37] Aff. of Elise K. Wolpert, Esq. (D.I. 67).

[38] Aff. of Brian J. Chapman, Esq. (D.I. 68).

[39] Aff. of Elise K. Wolpert, Esq., at 1-2.

recollection, this is the only instance in which Mr. Hayman-Cooper followed [her] advice."[40] Ms. Wolpert's advice and filing of a waiver—which the Court finds Mr. Hayman-Cooper did consent to—was objectively reasonable. Yet even if it weren't, Mr. Hayman-Cooper can't prove that the preliminary hearing waiver prejudiced him as required here. Because a later valid indictment was returned, any "defect in the preliminary hearing process, including a defective waiver, has no bearing on a defendant's subsequent conviction . . . the lack of a preliminary hearing was inconsequential."[41]

(19) ***Bail Motion Claim (Ground Three)***—Mr. Hayman-Cooper states that Ms. Wolpert was ineffective because she refused to file a motion for a bail hearing.[42] Mr. Hayman-Cooper reasons that if he was out on bail then he could have provided been of greater aid to his counsel in marshalling his defense. But this this is far from demonstrating a reasonable probability that if he had had a successful bail hearing—something very unlikely give the turn of events in his case—he would not have pleaded guilty.[43]

---

[40]  *Id.* at 2.

[41]  *State v. Bailey*, 2004 WL 2914320, at *2 (Del. Super. Ct. Dec. 13, 2004).

[42]  He also claims that Ms. Wolpert should have aided him in recovering money that was confiscated by the police. He provides no legal support for the notion that such a complaint can support a Sixth Amendment ineffective assistance claim. Put simply, a criminal defense attorney is not required, nor should she, carry out all tasks demanded by her client.

[43]  *See Dillard*, 2019 WL 118437, at *3 (quoting *Albury*, 551 A.2d at 59 (citing *Hill*, 474 U.S. at 58)).

(20) ***Plea Negotiation Claim (Ground Four)***—Mr. Hayman-Cooper claims that Ms. Wolpert's provided ineffective assistance because she failed to properly negotiate a plea deal and effectively communicate any potential sentencing consequences that might accompany the potential pleas. These allegations are wholly conclusory; Mr. Hayman-Cooper fails to explain how his counsel's negotiations were insufficient or how he was misadvised. "A defendant's conclusory allegations of ineffective assistance of counsel do not establish that his counsel's representation was objectively unreasonable."[44] And a review of the steps taken by Ms. Wolpert in attempting to negotiate a favorable plea and communicate with Mr. Hayman-Cooper about a potential plea belie his protestations.[45] Clearly, during Ms. Wolpert's representation of him, Mr. Hayman-Cooper had made his own choice to accept no plea offers.[46]

(21) ***Plea Advice Claim (Ground Eight)***—Mr. Hayman-Cooper asserts that Mr. Chapman's assistance was ineffective because he failed to notify Mr. Hayman-Cooper, prior to entering the ultimate guilty plea, that the State would be requesting a ten-year prison sentence. Mr. Hayman-Cooper claims that if he had known this

---

[44] *State v Adkins*, 2019 WL 3202254, at *3 (Del. Super. Ct. July 16, 2019); *State v. Harrell,* 2017 WL 2418278, at *2 (Del. Super. Ct. Jun. 5, 2017); *Sartin*, 2014 WL 5392047, at *2.

[45] Aff. of Elise K. Wolpert, Esq., at 3-8.

[46] *E.g.* Aff. of Elise K. Wolpert, Esq., at 7-8 (recounting Mr. Hayman-Cooper's vulgar reaction to the State's plea offer).

- 12 -

information, then he wouldn't have entered the plea deal and taken his chances at trial.

(22) Again, the record does not support Mr. Hayman-Cooper's claim against Mr. Chapman. The plea entered was an open plea with no sentencing recommendation made by either party therein.[47] And Mr. Chapman made no promises to Mr. Hayman-Cooper about the final sentence and was unaware of what the State's final sentencing request would be prior to the sentencing hearing.[48] So, Mr. Chapman could not be blamed for failing to provide information he just did not have prior to the plea. There is not evidence of counsel deficiency here.

(23) *Failure to Communicate (Grounds Two and Six)*—Mr. Hayman-Cooper complains that both Ms. Wolpert and Mr. Chapman failed to maintain efficient communications and exercise proper due diligence. A criminal defense attorney must provide truthful information and informed legal advice; not just mouth whatever his or her client may want to hear.[49] A corollary to this is that counsel need not be at the client's beck and call,[50] but must communicate as needed and deftly sift through the many demands one facing serious criminal charges might impose.

---

[47] Plea Agreement, at 1; 3/13/23 Plea Tr., at 3-4, 15-16 (D.I. 42).

[48] Aff. of Brian J. Chapman, Esq., at 3-4.

[49] *State v. Dillard*, 2019 WL 118437, at *5 (Del. Jan. 4, 2019).

[50] *Dillard*, 2019 WL 118437, at *5. *See* American Bar Association, *Standards for Criminal Justice: Prosecution Function and Defense Function*, Standard for Defense Function 4-1.2(d) (2017) ("Defense counsel is the client's professional representative, not the client's alter-ego.").

- 13 -

Doing so is required; not objectively unreasonable.[51]  It is instead precisely the professional behavior expected of Delaware counsel.[52]  At bottom, an effective criminal defense attorney acts as a dedicated independent professional when assisting his or her client by providing advice and advocacy within ethical and legal limits—the attorney does not advise and assist the client in a subservient capacity.

(24)  In turn, the proper examination of counsel's conduct does not concentrate on what the defendant wanted or demanded, but did not get.[53]  Rather, the proper examination is on what counsel actually did and whether it was objectively reasonable under the circumstances.[54]  The record demonstrates that

---

[51]  *See* ABA, Standard for Defense Function 4-1.3(d) (Counsel's duties include "a duty to communicate and keep the client informed and advised of significant developments and potential options and outcomes"); *id.* at 4-3.9(a) (describing counsel's duty as one "to keep the client *reasonably* and currently informed" about developments in and the progress of his case) (emphasis added); *id.* at 4-5.1(b) (*"*Defense counsel should keep the client *reasonably and regularly* informed about the status of the case.") (emphasis added).

[52]  *Dillard*, 2019 WL 118437, at *5; *State v. Colburn*, 2016 WL 3248222, at *3-4 (Del. Super. Ct. June 1, 2016), *aff'd*, 2016 WL 5845778 (Del. Oct. 5, 2016) (Court could not find counsel's actions unreasonable when she correctly explained legal landscape to client and followed her ethical obligations under the  applicable law.).

[53]  *See Bultron v. State*, 897 A.2d 758, 763 (Del. 2006) ("While a defendant has a right to counsel, he does not have a right to counsel who will not disagree with him about how best to proceed with his case."); *see also* ABA Standard for Defense Function 4-3.9(a) and(b) ("Defense counsel should keep the client *reasonably* and currently informed about developments in and the progress of the lawyer's services, including developments in pretrial investigation, discovery, disposition negotiations, and preparing a defense. Information should be sufficiently detailed so that the client can meaningfully participate in the representation. . . . Defense counsel should promptly comply with the client's *reasonable* requests for information about the matter and for copies of or access to relevant documents, unless the client's access to such information is restricted by law or court order.") (emphasis added).

[54]  *See Green v. State*, 238 A.3d 160, 174 (Del. 2020) (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)) (explaining that: (1) the burden is on the ineffectiveness claimant to show that counsel's conduct fell below an objective standard of reasonableness, "*i.e.*, that no reasonable lawyer would

Mr. Hayman-Cooper was a difficult and demanding client who—both himself and through others—bombarded each attorney with dozens and dozens of emails, other electronic communications, and demands. The affidavits provided by counsel indicate that they each fielded these communications appropriately and exercised proper diligence in their representation.[55] And Mr. Hayman-Cooper fails to demonstrate that had there been some additional or different communication there's some reasonable probability that he would not have pleaded guilty but instead opted for trial.[56]

(25) ***Protective Order Claim (Grounds Five and Seven)***—Mr. Hayman-Cooper asserts that both Ms. Wolpert and Mr. Chapman's were ineffective because they didn't supply him with a copy of the protective order, they refused to allow him to review redacted copies of witness statements, and they refused to discuss the substance of the witness statements. But the record demonstrates that Ms. Wolpert and Mr. Chapman each independently discussed the evidence with Mr. Hayman-Cooper and the parameters of the protective order.[57] Counsels' actions here were

---

have conducted the defense as his lawyer did"; and (2) when assessing the reasonableness of counsel's conduct, the Court considers "not what is possible or what is prudent or appropriate, but only what is constitutionally compelled").

[55]   *See generally* Aff. of Brian J. Chapman, Esq.; Aff. of Elise K. Wolpert, Esq.

[56]   *See Dillard*, 2019 WL 118437, at *3 (quoting *Albury*, 551 A.2d at 59 (citing *Hill*, 474 U.S. at 58)).

[57]   *E.g.* Aff. of Elise K. Wolpert, Esq., at 2-3, 8-9; Aff. of Brian J. Chapman, Esq., at 2-3.

not objectively unreasonable.  Once again, a criminal defense attorney need provide adequate information and informed legal advice; he or she need not accede to a client's every wish.

(26) ***Ineffective Assistance/Sentencing Claim (Ground Thirteen)***— Mr.  Hayman-Cooper says that Mr. Chapman's assistance was ineffective because he didn't correct the Court's reading of the sentencing guidelines and didn't raise an issue with the State's allegation of witness intimidation.  Mr. Chapman's actions at sentencing were not objectively unreasonable.  Mr. Chapman couldn't credibly refute the State's allegation of witness intimidation when Mr. Hayman-Cooper had already pled guilty to that charge.[58] And he cannot demonstrate prejudice from anything he now suggests Mr. Chapman did or did not do when this Court and our Supreme Court have already found Mr. Hayman-Cooper's identical sentencing claims to be "without merit."[59]

(27) ***Development and Communication of Defense Strategies (Ground Nine)***—Mr. Hayman-Cooper says Mr. Chapman failed to advise him of available

---

[58]  *See Hayman-Cooper I*, 2024 WL 321570, at *2 ("In now claiming that this statement [regarding witness intimidation] was false, Hayman-Cooper ignores that he pleaded guilty to tampering with a witness . . . by knowingly intimidating a witness or victim and that the shooting victim was the victim in question.").

[59]  *Hayman-Cooper I*, 2024 WL 321570, at *2 ("Finally, Hayman-Cooper argues that the sentencing judge relied on false information provided by the State to sentence him, erred in exceeding the Sentencing Accountability Commission ('SENTAC') guidelines, and failed to explain why he imposed sentences in excess of the SENTAC guidelines. These claims are without merit."); *Hayman-Cooper II*, 2024 WL 2815333, at *3-4 ("There is no illegality in the substance of Mr. Hayman-Cooper's sentence. Nor was that sentence imposed in an illegal manner.").

defenses. But, the record demonstrates that both Ms. Wolpert and Mr. Chapman communicated about potential defense strategies throughout. The case evidence and Mr. Hayman's eventual acts when released simply made a successful trial defense of his case far more difficult.[60] And even now, Mr. Hayman-Cooper identifies no specific defenses or strategy that would have led him to eschew a guilty plea. Put another way, he yet again fails to make "specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[61]

(28) ***Coerced Plea (Ground Fourteen)***—Mr. Hayman-Cooper asserts that both Ms. Wolpert and Mr. Chapman coerced him into pleading guilty.

(29) Again, it is difficult to divine how any actions taken by Ms. Wolpert can give grounds for Mr. Hayman-Cooper's coerced plea claim. He was appointed different counsel, Mr. Chapman, well before accepting the ultimate plea he entered. Mr. Hayman-Cooper does nothing to bridge that gap.

(30) The claim against Mr. Chapman is also unsuccessful. During Mr. Hayman-Cooper's plea colloquy, Mr. Chapman represented that he met with Mr. Hayman-Cooper on numerous occasions, discussed the charges and potential sentences with Mr. Hayman-Cooper, and assured that Mr. Hayman-Cooper

---

[60] *E.g.* Aff. of Elise K. Wolpert, Esq., at 2-5; Aff. of Brian J. Chapman, Esq., at 1-2, 5.

[61] *See Alston*, 2015 WL 5297709, at *3 (citing *Wright,* 671 A.2d at 1356); *Monroe*, 2015 WL 1407856, at *5 (citing *Dawson*, 673 A.2d at 1196); *Zebroski*, 822 A.2d at 1043.

understood the consequences of accepting the State's plea offer.[62] Mr. Hauman-Cooper confirmed that was true.[63]

(31) Mr. Hayman-Cooper also confirmed under oath that: (a) he understood the charges to which he was pleading guilty; (b) he understood the evidence against him; (c) he had committed those crimes to which he pled; (c) he was waiving all trial rights; and (d) he understood the sentencing provisions applicable in his case and his potential sentencing exposure.[64] Lastly, when asked whether he was satisfied with Mr. Chapman's representation, Mr. Hayman-Cooper said "Yes, ma'am."[65]

(32) Nothing in the record supports any suggestion that Mr. Hayman-Cooper was forced or coerced to plea by counsel or anyone else. Indeed, he denied that very thing when he entered the plea.[66] There being no clear and convincing contrary evidence, Mr. Hayman-Cooper is bound by his answers recorded on the guilty plea forms and given during his plea colloquy.[67]

(33) Mr. Hayman-Cooper's standalone sentencing and speedy trial claims are procedurally barred, waived, or otherwise without merit. Mr. Hayman-Cooper

---

[62] 3/13/23 Plea Tr., at 2-4.

[63] *Id.* at 5, 17.

[64] *Id.* at 5-17.

[65] *Id.* at 17.

[66] *Id.* at 13, 17.

[67] *See Somerville v. State*, 703 A.2d 629, 632 (Del. 1997); *Smith v. State*, 1996 WL 21050 (Del. Jan. 5, 1996).

has failed to carry his burden of demonstrating that Ms. Wolpert and/or Mr. Chapman's conduct during their representation fell below any objective standard of reasonableness. As noted before, Mr. Hayman-Cooper was a difficult client with damning evidence against him, who did not help his cause with either his persistent obstructive demands of counsel's time and attention or his own poor behavior and unwise choices while his case was pending. Both attorneys tackled these difficulties with the acumen and professionalism expected of defense counsel. Lastly, even if all that were not true, Mr. Hayman-Cooper has failed to demonstrate that but their supposed errors, he wouldn't have pleaded guilty but instead proceeded to trial. So, his Motion for Postconviction Relief must be **DENIED.**

**SO ORDERED,**

/s/ *Paul R. Wallace*

**Paul R. Wallace, Judge**

Original to Prothonotary

cc: Mr. Na'Zer Hayman-Cooper, *pro se*
  Timothy G. Maguire, Deputy Attorney General
  Brian J. Chapman, Esquire
  Elise K. Wolpert, Esquire